68 F.3d 337
 95 Cal. Daily Op. Serv. 8050, 95 Daily Journal
D.A.R. 13,837
INTERNATIONAL AMBASSADOR PROGRAMS, INC., Plaintiff-Appellant,
v.
ARCHEXPO, a USSR Company; Boris Khlebin; Andrei
Scherbakov, Defendants-Appellees.
ARCHEXPO COMMERCE AND INDUSTRY CENTRE, Plaintiff-Appellee,
v.
INTERNATIONAL AMBASSADOR PROGRAMS, INC., Defendant-Appellant.
 Nos. 94-35588, 94-35589.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 11, 1995.
Decided Oct. 13, 1995.
 
 Leslie R. Weatherhead, Witherspoon, Kelley, Davenport & Toole, Spokane, WA, and James J. Workland, Workland, Witherspoon, Riherd & Brajcich, Spokane, WA, for plaintiff-appellant, defendant-appellant International Ambassador Programs, Inc.
 Roger A. Leishman, Bogle & Gates, Seattle, WA, for plaintiff-appellee, defendants-appellees Archexpo, et al.
 Appeal from the United States District Court for the Eastern District of Washington.
 Before: BEEZER and HAWKINS, Circuit Judges, and TEVRIZIAN,* District Judge.
 MICHAEL DALY HAWKINS, Circuit Judge:
 
 
 1
 This case arises out of efforts to facilitate travel exchanges between the United States and republics of the former Soviet Union. International Ambassador Programs ("Ambassador") appeals the district court's ruling vacating a judgment in its favor. The court determined that Ambassador's judgment arose out of the same cause of action as a subsequent judgment in favor of Archexpo Commerce and Industry Centre ("Archexpo"), and therefore was barred as a "prior inconsistent judgment" under the "last-in-time" rule. See Robi v. Five Platters, Inc., 838 F.2d 318, 322 (9th Cir.1988). We have jurisdiction under 28 U.S.C. Sec. 1291. Because we conclude that the Moscow arbitration and the Ambassador litigation are two distinct disputes arising under two separate agreements, one providing for arbitration and one not, we reverse.
 
 I. Background
 
 2
 Ambassador is a Washington non-profit corporation that arranges tours and informational visits in foreign countries, including Russia. It organizes tours under two separate divisions: "Citizen Ambassador Program" ("CAP"), and "State Leadership Initiative" ("SLI"). Archexpo, once a Soviet state enterprise and now a Russian limited partnership, facilitates and expedites tours such as those sponsored by Ambassador in Russia and other former Soviet republics.
 
 
 3
 Archexpo and Ambassador entered into several agreements relating to tours in Russia. Two are of direct importance here. The first, dated April 28, 1989 ("the April agreement"), called for Archexpo to perform services in connection with Ambassador's CAP tours. The April agreement, later modified in contemplation of visits by delegations from the Soviet Union to the United States, contains a clause providing that "all disputes and differences without recourse to courts of law shall be referred to the arbitration tribunal with the USSR Trade and Industry Chamber for resolution, such resolution acknowledged as final by the parties." The second agreement, with an effective date of July 1, 1989 ("the July agreement"), was negotiated and executed in the United States and deals with visits by state delegations under Ambassador's SLI program. Unlike its April counterpart, the July agreement was signed only by Archexpo's representative and contains no arbitration clause.
 
 
 4
 Soon after the first CAP tours organized under the April agreement were complete, a dispute arose. Archexpo claimed it had not been paid for certain fees due under the April agreement; Ambassador denied that it owed any additional payments and claimed an offset of approximately $20,000 for refunds it paid to tour delegations who were dissatisfied with Archexpo's service. In November 1990, the parties submitted the dispute to arbitration in Moscow, as required by the April agreement.
 
 
 5
 Ambassador advised the arbitrators that it believed it had separate legal claims against Archexpo which it intended to pursue in the United States. Accordingly, Ambassador filed suit in the District Court for the Eastern District of Washington claiming that Archexpo's sudden cancellation of an SLI delegation was a breach of the July contract (the "SLI suit"). Ambassador filed the separate action instead of submitting a counterclaim regarding the canceled SLI delegation to arbitration because it disputed the tribunal's jurisdiction over the dispute. There is no evidence that Archexpo sought a determination in the Moscow arbitration requiring Ambassador to present any other claims it believed it had for resolution there.
 
 
 6
 Ambassador filed the SLI suit on November 14, 1990. Archexpo and its officers were served, but chose not to appear or defend. Instead, Archexpo sent a letter to Ambassador's counsel (with a copy to the district court) that referred to the then-pending Moscow arbitration but did not ask the district court to stay or dismiss the litigation or to compel arbitration of the July agreement. Following a motion for summary judgment, Ambassador was awarded judgment in the amount of $493,454 against Archexpo on July 24, 1991 (the "SLI judgment"). Archexpo did not respond to the motion or appeal the resulting judgment.
 
 
 7
 Archexpo ultimately prevailed in the Moscow arbitration and on March 10, 1992 was awarded $131,730 against Ambassador. Archexpo then filed an action in the district court to confirm the award, and the judgment was entered on September 8, 1993 in its favor against Ambassador in the amount of $154,159 (the "arbitration judgment").
 
 
 8
 After the district court confirmed the arbitration award, Ambassador moved to offset Archexpo's arbitration judgment against Ambassador's SLI judgment. Archexpo, raising res judicata issues for the first time, filed a cross-motion to vacate Ambassador's award as a "prior inconsistent judgment" under the "last-in-time" rule. See Robi, 838 F.2d at 322. The district court agreed with Archexpo and vacated the SLI judgment.
 
 II. Standard of Review
 
 9
 The district court's decision that an action is barred by res judicata is reviewed de novo. International Union v. Karr, 994 F.2d 1426, 1429 (9th Cir.1993). Similarly, we review de novo the district court's determination that the dispute over the July agreement was subject to arbitration. Mediterranean Enters., Inc. v. Ssangyong Corp., 708 F.2d 1458, 1462-63 (9th Cir.1983).
 
 III. Separate Agreements
 
 10
 Critical to the determination of this appeal is whether the arbitration clause in the April agreement encompasses any subsequent contract, including the July agreement or, rather, whether the two agreements are separate, each subject to individual interpretation.[1] If the July agreement is a discrete agreement, the lack of an arbitration clause means disputes over the agreement are not subject to arbitration. On the other hand, if the two agreements are merely interrelated contracts in an ongoing series of transactions, as Archexpo contends, Ambassador should have submitted its claim under the July agreement to the Moscow arbitration, and the district court would have lacked jurisdiction to consider the SLI suit.
 
 
 11
 There is substantial evidence that the April and July agreements are independent and that the arbitration clause in the April agreement does not control the separate agreements of the parties. The agreements concern two separate types of tours and completely different groups of tourists. The July agreement contains no arbitration clause, indicating an intent to treat it differently than the April agreement. Moreover, the proof necessary to establish Archexpo's Moscow arbitration claims under the April agreement has nothing to do with the dispute under the July agreement.
 
 
 12
 Archexpo argues that Ambassador's claims under the July agreement were involved in the Moscow arbitration and, specifically, that several arbitration documents make reference to the claims. Mentioned they were, but principally because Ambassador quite specifically reserved the claims for the United States litigation it alerted the Moscow arbitrators it planned to pursue. We hold, therefore, that the July agreement is separate and independent from the April agreement, and that the arbitration clause does not apply to the July agreement. The district court erred when it vacated Ambassador's judgment for lack of subject matter jurisdiction under Fed.R.Civ.P. 60(b)(4).
 
 IV. Res Judicata
 
 13
 Ambassador argues that the district court's res judicata analysis was flawed from the outset because it applied the wrong rule. Ambassador contends that instead of determining whether the SLI suit arose out of the same transaction as the arbitration, the district court should have considered whether Ambassador's suit was a permissive or compulsory counterclaim in the arbitration proceeding. See Restatement (Second) of Judgments Sec. 22 (1982) ("Restatement Sec. 22").[2]
 
 
 14
 Archexpo argues that the district court correctly declined to evaluate the case under Restatement Sec. 22 and instead correctly applied the res judicata analysis from C.D. Anderson & Co. v. Lemos, 832 F.2d 1097, 1100 (9th Cir.1987). In that case, this court held that in determining whether a subsequent suit arises from the "same cause of action," and is thus barred by res judicata, courts must consider the following factors:
 
 
 15
 (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.
 
 
 16
 Id.
 
 
 17
 The present appeal, however, is distinguishable from C.D. Anderson. There, C.D. Anderson, the plaintiff in the second suit (the respondent in the arbitration), raised and litigated in the arbitration the very claims on which its suit was based. Since C.D. Anderson raised its counterclaims during arbitration, Restatement Sec. 22 was inapplicable. Here, in contrast, Ambassador did not litigate before the tribunal the counterclaim resulting from the cancellation of the SLI tour. It is true that Ambassador claimed it was owed approximately $20,000 for refunds it paid to disgruntled customers; however, this claim, even if characterized as a counterclaim, does not involve the canceled SLI delegation--the counterclaim on which Ambassador's SLI suit was based.
 
 
 18
 That Ambassador raised one counterclaim during arbitration does not mean that it necessarily raised all of its counterclaims. Nor was Ambassador required to raise the counterclaim by a compulsory counterclaim rule. Contrary to Archexpo's contention, Ambassador's generic statement that Archexpo's inadequate service "led to changes and cancellations in the scheduling and itineraries of delegations, and in one case the complete cancellation of a delegation," did not "raise" the counterclaim before the tribunal. Rather, Ambassador merely informed the tribunal that it had other legal claims which it was bringing in U.S. district court. Thus, the res judicata principles enunciated in Restatement Sec. 22, and not C.D. Anderson, apply to this case.
 
 
 19
 When Ambassador's claim is evaluated in light of Restatement Sec. 22, the only relevant inquiries are (1) whether Ambassador raised the counterclaim before the arbitration tribunal; and (2) whether the SLI suit would nullify or impair Archexpo's rights under the arbitration judgment. As noted above, there was no rule requiring Ambassador to present the claim as a compulsory counterclaim, and, in fact, it did not do so. Ambassador was, therefore, free to bring suit in a separate forum. Thus, the only remaining inquiry is whether Ambassador's SLI suit would "nullify the initial judgment or would impair rights established in the initial action." Restatement Sec. 22(2)(b).
 
 
 20
 Archexpo argues that since Ambassador's SLI judgment was larger than Archexpo's arbitration judgment, enforcement of the former would nullify the latter. This contention is meritless. Ambassador's SLI judgment does not undercut the legal basis for Archexpo's original claim, nor does it require vacation of the arbitration judgment. The two judgments simply need to be reconciled; Archexpo would receive a credit of $154,159 from its arbitration award which could be applied toward the $493,454 judgment it owed Ambassador. By offsetting the judgments, both parties would receive the benefits of their respective judgments. We remand this case to the district court with instructions to reinstate Ambassador's judgment, offset it against Archexpo's, calculate the appropriate interest adjustment and enter judgment for Ambassador in that amount.
 
 
 21
 Because we have concluded that Restatement Sec. 22's counterclaim rule permits the SLI suit, we need not reach the question of whether the last-in-time rule requires that the arbitration judgment be enforced and the earlier SLI judgment be invalidated.
 
 
 22
 REVERSED AND REMANDED.
 
 
 
 *
 Honorable Dickran M. Tevrizian, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 We note that Archexpo disputes the enforceability of the July agreement because it was signed only by Archexpo's representative. Apparently Russian law requires the signatures of all parties for an agreement to be legally binding. However, there is no indication in the July agreement that it was to be governed by Russian law or that the Archexpo representative who signed it did not have full authority to bind the partnership. The document, which was negotiated and executed in Spokane, Washington, is a sufficient memorandum of understanding to constitute an enforceable agreement under Washington law. See Wash.Rev.Code Sec. 19.36.010 (Washington's Statute of Frauds). We hold the July 1, 1989 document is a legally binding agreement between the parties and consider it as such
 
 
 [2]
 Restatement Sec. 22 provides:
 Sec. 22. Effect of Failure to Interpose Counterclaim.
 (1) Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2).
 (2) A defendant who may interpose a claim as a counterclaim but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:
 (a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or
 (b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.